UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

EUROPEAN SCHOOL OF ECONOMICS
FOUNDATION and ESE NYC, INC. d/b/a
EUROPEAN SCHOOL OF ECONOMICS,

     Plaintiffs,

  – against –

TEKNOLOJI HOLDINGS A.S. and
MEHMET EMIN HITAY,

     Defendants.

------------------------------------------------x

08 Civ. 2235 (TPG)

**OPINION**

  This is an action seeking a declaratory judgment to the effect that a binding contract exists between the parties and that plaintiffs are entitled to keep €500,000 paid by defendants in contemplation of the agreement. Defendants have filed a counterclaim on grounds of unjust enrichment, seeking the return of the €500,000 with interest of 9% per annum calculated from the date of the transfer, plus costs and disbursements.

  Defendants move for summary judgment on plaintiffs' claim and on their counterclaim. Plaintiffs cross-move for summary judgment on their claim and on defendants' counterclaim. All motions are denied.

### Facts

  The following facts are undisputed unless otherwise noted.

  Plaintiff European School of Economics Foundation ("ESEF") is a New York State not-for-profit foundation. Plaintiff ESE NYC, Inc. d/b/a

European School of Economics ("ESE NYC") is a New York State educational corporation.

Defendant Teknoloji Holding A.S. is a foreign holding company existing under the laws of the Republic of Turkey, with approximately 500 employees and a principal place of business in Istanbul, Turkey. Defendant Mehmet Emin Hitay is the principal of Teknoloji Holding and a citizen and resident of the Republic of Turkey.

On or about November 17, 2007, at a conference in Istanbul, Turkey, defendant Hitay first met an officer of plaintiffs named Stefano D'Anna. On or about November 20, 2007, Hitay and D'Anna met again at a dinner hosted by Hitay. The following day, on or about November 21, 2007, they met again at Hitay's office. During these meetings, the two discussed the possibility of opening a European School of Economics campus in the Republic of Turkey.

After their final meeting in Istanbul, D'Anna flew to Italy, where he drafted a document dated November 21, 2007 (the "11-21 Document") and faxed it the following day to Teknoloji Holding. The 11-21 Document is titled "Agreement," and states: "This letter sets forth our understanding concerning the licensing agreement between [ESEF/ESE NYC and Teknoloji Holding]." There is disagreement between the parties as to whether the 11-21 Document is a formal licensing agreement, as plaintiffs claim, or merely a proposed agreement, as defendants claim. The document provides:

> 6. [Teknoloji Holding] shall pay upon receipt of this agreement, a fee in the amount of euro 500,000.00 in consideration for the use of:
>     - The ESEF name and logo in the Turkish territory;
>     - The ESE name and logo in the Turkish territory;
>
>     The above-mentioned fee may be paid by International USD draft or by wire transfer to the following bank account:
>
>     ESE NYC INC.
>     [Bank information redacted]
>
> 7. [Teknoloji Holding] shall pay an annual fee in the amount of euro 100,000.00 in consideration for the use of:
>     - The ESEF name and logo in the Turkish territory;
>     - The ESE name and logo in the Turkish territory;
>
>     Such fee shall be paid every year in one time payment on or before November 23rd by International USD draft or by wire transfer to the following bank account:
>
>     ESE NYC INC.
>     [Bank information redacted]
>
> This agreement will be a five-year term and shall remain in force except in the event of payment default.
>
> This agreement shall be governed by the laws of the State of New York, United States of America.

Neither Hitay nor anyone associated with defendants ever signed this document.

On November 26, 2007, defendants wired to plaintiffs the sum of €500,000, which plaintiffs claim manifested defendants' acceptance of the offer, assent to the terms thereof, and intent to be bound, and thus created a binding contract. Hitay claims that the wiring of the money was merely a demonstration of defendants' "good faith willingness to enter, and financial ability to fund, the venture," and that no binding contract was ever created. In December 2007 the parties exchanged

several draft agreements, characterized by plaintiffs as "post-contractual negotiations" and by defendants as "unsigned purported agreements." The parties never agreed on the content of these later drafts. In January 2008, Hitay demanded the return of the €500,000.

## Procedural History

On January 22, 2008, plaintiffs filed a complaint in the Supreme Court of New York State, seeking a declaratory judgment that a binding contract exists between the parties and that plaintiffs are entitled to keep the €500,000. On March 6, 2008, defendants removed this action to federal court on grounds of diversity of citizenship and an amount in controversy exceeding $75,000. On March 19, 2008, defendants filed an answer with a counterclaim, arguing that no contract ever existed between the parties and seeking the return of the €500,000 on a theory of unjust enrichment. On April 7, 2008, plaintiffs filed an answer to the counterclaim. On May 9, 2009, defendants filed a motion for summary judgment. On July 16, 2009, plaintiffs filed a cross-motion for summary judgment.

## Discussion

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). The substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making the summary judgment determination, the court

must draw all justifiable inferences in favor of the non-movant. Id. at 255. However, the non-movant is obligated to "set out specific facts showing a genuine issue for trial," and "may not rely merely on allegations or denials" to support its opposition to the motion. Fed. R. Civ. P. 56(e)(2).

New York General Obligations Law § 5-701(a)(1) states: "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . . [b]y its terms is not to be performed within one year from the making thereof . . . ."

The court assumes for purposes of this decision, without finally deciding, that what is at issue is a contract that could not have been performed within one year.

However, there is certainly a factual issue as to whether there was a writing signed by the defendant or his agent. This issue involves the significance of the wire transfer of €500,000 and the form it took. All motions for summary judgment are therefore denied.

SO ORDERED.

Dated: New York, New York
       March 31, 2010

_____
Thomas P. Griesa
U.S.D.J.

- 5 -